**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Robert E. Blackburn**

Civil Action No. 14-cv-02408-REB-AP
(Bankruptcy Case No. 13-23461-EEB Chapter 13)

In re: JARED TRENTON COWEN,

      Debtor.

---

Adversary No. 13-1622-EEB

JARED TRENTON COWEN,

      Plaintiff - Appellee,

v.

WD EQUIPMENT, LLC,
AARON WILLIAMS, and
BERT DRING,

      Defendants - Appellants.

---

**ORDER AFFIRMING IN PART AND REVERSING IN PART
THE ORDER OF THE UNITED STATES BANKRUPTCY COURT**

---

**Blackburn, J.**

      The defendant-appellants filed a timely appeal of a final order of the United

States Bankruptcy Court for the District of Colorado.  In the order, the bankruptcy court

(1) found that the defendants violated the automatic stay imposed under 11 U.S.C.

§ 362; and (2) awarded actual damages and punitive damages caused by the violation

of the automatic stay.  The appellants filed an opening brief [#14][1], the appellee's filed

---

[1]  "[#14]" is an example of the convention I use to identify the docket number assigned to a
specific paper by the court's case management and electronic case filing system (CM/ECF). I use this
convention throughout this order.

an opening brief [#19], and the appellants filed a reply brief [#22].   I affirm the order of

the bankruptcy court in part and reverse it in part.

## I.  JURISDICTION

Under 28 U.S.C. § 1334, United States District Courts have original jurisdiction in

all civil proceedings arising in cases under Title 11, United states Code.  I have

jurisdiction to adjudicate this bankruptcy appeal under 28 U.S.C. § 158(a)(1).

## II.  STANDARD OF REVIEW

I am bound by  the bankruptcy court's findings of fact, unless they are clearly

erroneous.  FED. R. BANKR. P. 8013; *In re Branding Iron Motel, Inc.,* 798 F.2d 396, 399

(10th Cir.1986).  A finding of fact is clearly erroneous only if the appellate court has the

definite and firm conviction that a mistake has been committed. *United States v.*

*United States Gypsum Co.*, 333 U.S. 364 (1948). It is the responsibility of an appellate

court to accept the ultimate factual determination of the fact finder, i.e., the bankruptcy

court, unless that determination either (1) is completely devoid of minimum evidentiary

support displaying some hue of credibility, or (2) bears no rational relationship to the

supportive evidentiary data. *Jardine's Professional Collision Repair, Inc. v. Gamble*,

232 B.R. 799, *800 (D. Utah, 1999) (citing *Gillman v. Scientific Research Prods. (In*

*re Mama D'Angelo, Inc.),* 55 F.3d 552, 555 (10th Cir. 1995)(internal citations omitted));

*In re Dinviney*, 225 B.R. 762, *769 (10th  Cir. BAP (Okla.), 1998) (internal citations

omitted).  I review *de novo* conclusions of law reached by the bankruptcy court. *In re*

*Mullet*, 817 F.2d 677, 678 (10th Cir.1987).

## III.  BACKGROUND

On August 6, 2013, the debtor, Jared Cowen, filed a voluntary petition for relief

under Chapter 13 of the United States Bankruptcy Code.  Prior to his bankruptcy

petition, two trucks owned by Mr. Cowen, a 2006 Kenworth and a 2000 Peterbilt, had been repossessed by creditors who held security interests in the trucks.  Shortly after he filed his bankruptcy petition, Mr. Cowen demanded that the creditors return possession of the trucks to Mr. Cowen as required, Mr. Cowen contends, by the automatic stay imposed under 11 U.S.C. § 362(a)(3).   The creditors refused to return possession of the trucks to Mr. Cowen.  Before they were repossessed, Mr. Cowen used the trucks in his trucking business.

Before the bankruptcy filing of Mr. Cowen, defendant Bert Dring held a purchase money security interest in the 2006 Kenworth.  Mr. Dring repossessed the Kenworth on July 29, 2013, eight days before the bankruptcy filing.  Some personal property of Mr. Cowen was in the Kenworth when it was repossessed.  This property was not subject to a security interest.  After being notified of the bankruptcy filing of Mr. Cowen, Mr. Dring refused to return the Kenworth and the personal property to Mr. Cowen.

Before the bankruptcy filing of Mr. Cowen, defendant WD Equipment, LLC loaned money to Mr. Cowen and held a lien on the 2000 Peterbilt to secure the loan. Sometime before the bankruptcy filing, the Peterbilt broke down and was towed to MHC Kenworth for repair.  In late July and early August, the debtor sought to re-finance his debt to WD Equipment, but was not able to do so.  At some point during this process, defendant Aaron Williams, the owner and manager of WD Equipment, instructed MHC Kenworth to have no further communication with the debtor about the Peterbuilt.  The Peterbuilt remained in the possession of WD Equipment after Mr. Cowen filed his bankruptcy petition.

When Mr. Cowen notified WD Equipment of his bankruptcy filing, WD informed Mr. Cowen for the first time that WD had re-titled the Peterbuilt in its own name on

August 1, 2013.  This statement indicates that, although the Peterbilt physically was in the possession of the repair shop, MHC Kenworth, WD Equipment viewed itself as having repossessed the Peterbilt.  The fact that WD Equipment instructed MHC Kenworth not to communicate with Mr. Cowen about the Peterbilt also indicates that WD Equipment viewed itself as having the right to possess the Peterbilt.  After being notified of the bankruptcy filing of Mr. Cowen, WD Equipment refused to return the Peterbilt to Mr. Cowen.

On October 16, 2013, Mr. Cowen filed an adversary complaint asserting claims for (1) violation of the automatic stay (Kenworth); (2) determination of an estate asset and violation of the automatic stay based on violation of the Colorado Uniform Commercial Code (improper notice of disposition of collateral - Kenworth); (3) determination of an estate asset and violation of the automatic stay based on violation of the Colorado Uniform Commercial Code (premature sale of collateral - Kenworth); (4) determination of an estate asset and violation of the automatic stay based on violation of the Colorado Uniform Commercial Code (improper notice of disposition of collateral - Peterbilt); (5) determination of an estate asset and violation of the automatic stay based on violation of the Colorado Uniform Commercial Code (premature sale of collateral - Peterbilt).

On November 15, 2013, the Chapter 13 Trustee filed a motion to dismiss the Chapter 13 proceeding of Mr. Cowen.  On January 15, 2014, the bankruptcy court granted the motion and dismissed the Chapter 13 case of Mr. Cowen.  However, the bankruptcy court ordered that it would retain jurisdiction over this adversary proceeding concerning violation of the automatic stay.  After a trial, the bankruptcy court entered an order finding that the defendant-appellants (appellants) had violated the automatic stay

4

by retaining possession of the two trucks. *Record on Appeal* (ROA) [#9], Vol. 2 [#9-3],

CM/ECF pp. 43 - 61 (Bankruptcy Court Order).  The bankruptcy court awarded actual

damages and punitive damages to the debtor based on the violations of the automatic

stay and entered judgment against the appellants.  The appellants appeal that order.

The appellants raise five issues on appeal:[2]

      1.  Whether the bankruptcy court lacked constitutional authority to
enter final judgment in the adversary proceeding?

      2.  Whether the bankruptcy court erred in retaining jurisdiction over
the adversary proceeding after the underlying bankruptcy case was
dismissed?

      3.  Whether the bankruptcy court erred in its interpretation and
application of 11 U.S.C. § 362(a)(3) with regard to property that was not in
possession of the debtor at the time of filing, and where the right to
possess such property was in dispute?

      4.  Whether the bankruptcy court erred by making findings,
specifically those findings associated with the calculation of damages, that
were unsupported by the evidence adduced at trial?

      5.  Whether the bankruptcy court erred in awarding and calculating
punitive damages?

## IV.  CONSTITUTIONAL AUTHORITY OF THE BANKRUPTCY COURT

Regardless of whether the underlying bankruptcy case was dismissed or not, the

appellants contend the bankruptcy court did not have the constitutional authority to

enter a final judgment in this adversary proceeding.  This is true, the appellants assert,

because in resolving the question of whether the appellants violated the automatic stay,

the bankruptcy court necessarily had to resolve questions of state law concerning who

held legal title to the trucks when Mr. Cowen filed his bankruptcy petition.  This included

---

[2]  I list the issues in an order different from the order adopted by the appellants.  As listed here,
the court will consider first issues which implicate the jurisdiction and authority of the bankruptcy court.  In
addition, the court will consider the issue of actual damages before considering punitive damages.

determinations of whether the appellants failed to comply with requirements of state law concerning sale of collateral and transfer of title of collateral after repossession.  The bankruptcy court found that the appellants had not made valid transfers of title to either truck before Mr. Cowen filed his petition, including findings that the appellants did not comply with state law concerning the sale of collateral.

"Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11 and may enter appropriate orders and judgments, subject to review by the district court or the bankruptcy appellate panel." *In re Johnson*, 575 F.3d 1079, 1082 (10th Cir. 2009) (citing § 157(b)(1), internal quotation omitted).  In general, "[c]ore proceedings are proceedings which have no existence outside of bankruptcy.  Actions which do not depend on the bankruptcy laws for their existence and which could proceed in another court are not core proceedings." *Gardner v. United States (In re Gardner)*, 913 F.2d 1515, 1518 (10th Cir.1990).

A claim for violation of the automatic stay of § 362, which is brought under § 362(k)(1), "is a core proceeding because it derives directly from the Bankruptcy Code and can be brought only in the context of a bankruptcy case." *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009).  The fact that issues of state law must be resolved in a core proceeding, without more, does not transform that proceeding into a non-core proceeding.  28 U.S.C. § 157(b)(2) provides a non-exclusive list of core proceedings. That list includes "determinations of the validity, extent, or priority of liens" and "proceedings affecting . . . adjustment of the debtor-creditor or the equity security holder relationship."  "A determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law." 28 U.S.C. §

157(b)(3).

Routinely, bankruptcy courts address issues of state law in resolving core proceedings.  To cite only one example, as permitted by the bankruptcy code, Colorado law governs exemptions claimed by Colorado residents.  11 U.S.C. § 522;  §13-54-107, C.R.S.  Determination, under state law, of exemptions applicable in a case under federal bankruptcy law does not automatically make the exemption determination a non-core proceeding.  In this case, the claim for violation of the automatic stay of § 362 was a core proceeding in which the bankruptcy court had jurisdiction under 28 U.S.C. § 157 to enter orders and judgments.  *In re Johnson*, 575 F.3d 1079, 1083 (10th Cir. 2009).  That fact that some issues of state law were addressed and resolved by the bankruptcy court in the course of this core proceeding did not, without more, deprive the bankruptcy court of jurisdiction to enter a final order and judgment resolving the claimed violation of the automatic stay provisions of § 362.  This conclusion concerning the core proceeding in this case is consistent with the holdings in *Executive Benefits Ins. Agency v. Arkison* , ___ U.S. ___, 134 S.Ct. 2165 (2014) and *Stern v. Marshall*, ___ U.S. ___, 131 S.Ct. 2594 (2011).

## V.  RETENTION OF JURISDICTION OVER ADVERSARY PROCEEDING AFTER DISMISSAL OF UNDERLYING BANKRUPTCY CASE

Dismissal of a bankruptcy case does not divest the bankruptcy court of jurisdiction to resolve an adversary proceeding involving a claim for damages based on a violation of the automatic stay imposed by § 362.  *In re Johnson*, 575 F.3d 1079, 1081 (10th Cir. 2009).  The *Johnson* court found that it

> is particularly appropriate for bankruptcy courts to maintain jurisdiction over § 362(k)(1) proceedings because their purpose is not negated by dismissal of the underlying bankruptcy case. They still serve (a) to compensate for losses that are not extinguished by the termination of the

7

bankruptcy case and (b) to vindicate the authority of the statutory stay.

*Id*. at 1083.

The ***Johnson*** court noted that its holding is limited to core proceedings.  ***Id***. at

1083.  Non-core proceedings pending in a bankruptcy court generally are dismissed

when the underlying bankruptcy is dismissed, although that rule is not absolute.  ***Id***. The

proceeding in question in this case was a core proceeding involving claimed violations

of the automatic stay of § 362.  Under ***Johnson***, it was proper for the bankruptcy court

to retain jurisdiction over this proceeding after the underlying bankruptcy case was

dismissed.

## VI.  APPLICATION OF § 362(a)(3)

Section 362 is the provision of the bankruptcy code that defines the automatic

stay.  Under § 362(a), the filing of a bankruptcy petition "operates as a stay" of the acts

enumerated in § 362(a).  Section 362(a)(3) prohibits, in relevant part, "any act . . . to

exercise control over property of the estate."  Closely related to § 362(a)(3) is the

turnover of property provision of § 542(a).  Section 542(a) provides, in relevant part, that

"an entity . . . in possession, custody, or control during the case, of property that the

trustee may use, sell, or lease under section 363 of this title . . shall deliver to the

trustee, and account for, such property . . ., unless such property is of inconsequential

value or benefit to the estate."  When interpreting § 362(a), courts often discuss the

interplay between these two statutory provisions.

The appellants contend the bankruptcy court erred when it applied the automatic

stay of § 362(a)(3) to property not in possession of the debtor at the time the debtor filed

his bankruptcy petition.  According to the appellants, if a creditor repossesses collateral

owned by the debtor prior to the bankruptcy filing of the debtor, § 362(a)(3) does not

automatically require the creditor to return the collateral to the trustee or the debtor-in-possession even if the property is property of the bankruptcy estate.  Rather, the appellants assert, such a creditor need not turn over such collateral until an order for turnover of property, under § 542, is issued by the bankruptcy court.

After Mr. Cowen filed his petition, he notified the defendants and demanded return of the Peterbilt and the Kenworth.  The defendants refused to return the trucks. In addition, personal property of Mr. Cowen was in the trucks when they were repossessed.  This personal property was not subject to a security interest held by the defendants, but the defendants did not return this personal property after demand by Mr. Cowen.  These refusals are the basis for the finding of the bankruptcy court that the defendants violated the automatic stay.

The appellants argue, and many agree, that continued possession of collateral by a secured creditor in these circumstances does not constitute an act "to exercise control over property of the estate," in violation of  § 362(a)(3).  The appellants contend passive possession of collateral by a secured creditor, without more, is not such an act.

Courts have taken different views on whether a secured creditor violates § 362(a)(3) simply by retaining possession of collateral seized pre-petition after a bankruptcy petition is filed.  The United States Bankruptcy Appellate Panel for the Tenth Circuit has held that continued possession of collateral by such a secured creditor post-petition is a violation of the automatic stay.  *In re Yates*, 332 B.R. 1, 7 (10th Cir. BAP 2005).  The *Yates* court relied on the interplay between § 362(a)(3) and § 542(a).

> § 542(a) states that a creditor with possession of property of the estate at the time of filing "shall" turn over the property to the trustee.  The language of this turnover provision is mandatory. This mandatory language squares with the language and impact of the automatic stay. By requiring a creditor to turn over property of the estate upon the filing of a bankruptcy petition,

> § 542(a) prevents the continued exercise of control over property of
> estate—a violation of the automatic stay. Thus, § 542(a) works to avoid
> what § 362(a) forbids—the retention of property of the estate after filing.

*Id*. at 4.

What is a secured creditor in possession of collateral to do?  The *Yates* court found that the relief from automatic stay provisions of § 362(d) and the "inconsequential value or benefit" exception to the § 542(a) turnover of property requirement work in tandem to provide creditors with "what amounts to an affirmative defense to the automatic stay."  *Id*. at 5.

>  Section 362(d) allows a creditor to obtain relief from the stay "after notice
> and a hearing." Section 362(d) relief is for creditors to invoke.  The onus is
> on the creditor to seek relief from the stay.  In addition, § 542(a) requires
> that a creditor turn over possession of "property that the trustee may use,
> sell, or lease under § 363."  The only exception to § 542(a)'s compulsory
> turnover provision is if "such property is of inconsequential value or benefit
> to the estate."  It cannot be coincidence that §§ 362(d)(2) and 542(a) both
> allow relief to a creditor where the estate has little or no equity interest in
> the property. Under both provisions, the burden is on the creditor to
> demonstrate the estate's lack of equity.

*Id*. at 5 - 6.

The *Yates* court relied on the holding of the Supreme Court of the United States in *U.S. v. Whiting Pools, Inc.*, 462 U.S. 198 (1983).  In *Whiting Pools*, the Supreme Court examined the application of the turnover of property requirement of § 542(a) in a proceeding under Chapter 11.  In *Whiting Pools*, the United States Internal Revenue Service was a secured creditor of the debtor and had seized certain property of the debtor pre-petition.  After Whiting Pools filed bankruptcy, the IRS sought relief from the automatic stay and Whiting Pools sought an order requiring the IRS to return the seized property to the bankruptcy estate.  *Id*. at 201.  The bankruptcy court found that the automatic stay was applicable to the IRS and ordered the IRS to turn over the property

because it was essential to the reorganization effort of the debtor. *Id*. The court also required Whiting Pools to provide specified protection of the interests of the IRS. *Id*. The precise question before the Court was "whether § 542(a) of [the bankruptcy code] authorized the Bankruptcy Court to subject the IRS to a turnover order with respect to the seized property." *Id*. at 199.

Like the *Yates* court, the *Whiting Pools* Court viewed the turnover of property requirement of § 542(a) as a modification of the rights available to secured creditors. With that modification in effect, the Court held, a secured creditor in possession of the collateral must seek protection in the provisions of the bankruptcy code rather than relying on "the nonbankruptcy remedy of possession." *Id*. at 204.

> As does all bankruptcy law, § 542(a) modifies the procedural rights available to creditors to protect and satisfy their liens. In effect, § 542(a) grants to the estate a possessory interest in certain property of the debtor [which possessory interest] was not held by the debtor at the commencement of reorganization proceedings. The Bankruptcy Code provides secured creditors various rights, including the right to adequate protection, and these rights replace the protection afforded by possession.

*Id*. at 206 - 207. Ultimately, the *Whiting Pools* Court held, § 542(a) "simply requires the [IRS] to seek protection of its interest according to the congressional established bankruptcy procedures, rather than by withholding the seized property from the debtor's efforts to reorganize." *Id*. at 212. Although *Whiting Pools* concerned a reorganization under Chapter 11, the same rationale applies equally in a reorganization under Chapter 13.

The view of § 362(a)(3) and § 542(a) described above, as applied to a secured creditor who took possession of collateral pre-petition, is the majority view on this issue. *See Weber v. SEFCU (In re Weber)*, 719 F.3d 72 (2d Cir.2013); *Thompson v. Gen. Motors Acceptance Corp., LLC*, 566 F.3d 699 (7th Cir.2009); and *Knaus v.*

*Concordia Lumber Co., Inc. (In re Knaus)*, 889 F.2d 773 (8th Cir.1989).  The minority view of this issue is detailed very nicely in *In re Hall*, 502 B.R. 650 (Bankr. D.C. 2014). The *Hall* court noted that § 542(a) has been part of the bankruptcy code since 1978. The opinion of the Supreme Court in *Whiting Pools* was issued in 1983.  In 1984, Congress amended § 362(a)(3) to extend the automatic stay to "any act . . . to exercise control over property of the estate."  The *Hall* court found that § 542(a), concerning turnover of property of the estate, was not considered to be self-executing prior to the 1984 amendment of § 362(a)(3).  In that context, the *Hall* court concluded, the 1984 amendment of § 362(a)(3) cannot be seen as having created a duty of creditors in possession of collateral automatically to return the collateral to the trustee when a bankruptcy petition is filed.  Rather, the *Hall* court held, "it is only an affirmative act to change control of property of the estate that can give rise to a violation of § 362(a)(3). In short, § 362(a)(3) does not bar continued retention of property seized prepetition." *Hall*, 502 B.R. 650, 653 (Bankr. D.C. 2014).  This view is supported by authority from the United States Court of Appeals for the District of Columbia Circuit.  *U.S. v. Inslaw, Inc.*, 932 F.2d 1467, 1474 (D.C. Cir. 1991) (automatic stay serves as a restraint only on acts to gain possession or control over property of the estate post-petition;  statutory language makes clear that the stay applies only to acts taken after the petition is filed).

Both the majority and minority views of this issue have much to recommend them.  In this case, the bankruptcy court adopted and followed the majority view, the view adopted by the Bankruptcy Appellate Panel for the Tenth Circuit in *In re Yates*, 332 B.R. 1, 7 (10th Cir. BAP 2005). On *de novo* review of this legal issue, I find and conclude that the decision of the bankruptcy court to follow the majority view of the function of § 362(a)(3) is correct.

## VII.  EVIDENCE TO SUPPORT CALCULATION OF DAMAGES

The appellants challenge the evidentiary basis for a portion of the damages awarded to Mr. Cowen for the loss of a contract with the United States Postal Service caused by the violation of the automatic stay by the appellants.  Mr. Cowen does not respond to this argument.  The appellants do not challenge any other aspect of the actual damages awarded by the bankruptcy court.

The bankruptcy court found:

> The Defendants' refusal to turn over the Trucks proved extremely detrimental to the Debtor's livelihood. Based on his performance in December, 2012, the Postal Service contacted the Debtor directly in October, 2013 and offered J and S [the debtor's trucking company] the opportunity to cover all of the mail loads between Denver, Colorado and Des Moines, Iowa during the 2013 holiday season, at a rate of $1.20 per mile for teams and $1.10 per mile for solo drivers.

*Bankruptcy Court Order* [#9-3], CM/ECF p. 47.  The bankruptcy court found that the refusal of the appellants to return the trucks made it impossible for the debtor to accept the 2013 postal service job.[3]  *Id.*, p. 48.  The loss of that job, the court found, caused a substantial financial loss to Mr. Cowen.  Based on the performance of Mr. Cowen under a similar contract in 2012 and other evidence, the bankruptcy court assumed Mr. Cowen "would have been able to run two team trucks in the same manner as he did in 2012, and that the rest of the loads would have been carried by owner-operators using their own trucks and operating authorities."  *Id.*, p. 56.  The appellants do not challenge this finding.

The appellants challenge the basis on which the bankruptcy court calculated the

---

[3]   The bankruptcy court found that return of the inoperable Peterbilt would have enabled Mr. Cowen to perform the postal service contact.  This is true, the court found, because possession of the Peterbilt, even if inoperable, would have enabled Mr. Cowen to obtain insurance required by Federal Motor Carrier Safety Administration.  His inability to obtain that insurance was the primary reason Mr. Cowen could not perform the postal service contract.  *Bankruptcy Court Order* [#9-3], CM/ECF p. 69.

amount of money Mr. Cowen would have made if he could have accepted and performed the postal service contract.  Mr. Cowen testified that the contract would have permitted him to run 324 loads total for the postal service.  *ROA* Vol. 3, 132:10, CM/ECF p. 135 (transcript of trial testimony).  He then testified that number would be made up of 294 team loads and 60 solo loads.  *Id.*, 132:14 - 15, CM/ECF p. 135.  In contrast, on questioning by the court, Mr. Cowen said the contract would have provided 60 solo loads and 264 team loads.  *Id.*, 132:23 - 133:2, CM/ECF pp. 135 - 136.  The total of 60 solo loads and 264 team loads is 324 loads, consistent with the total number of loads cited by Mr. Cowen in his testimony.  His earlier estimate of team and solo loads, 294 team and 60 solo, totals 356 loads, a number higher that the total of 324 loads estimated by Mr. Cowen.

Considering this evidentiary record, I find and conclude that the factual finding of the bankruptcy court that the postal service contract would have provided Mr. Cowen with 294 team loads is clearly erroneous.  The testimony of Mr. Cowen is internally consistent only if it is read to show, as he stated on questioning by the court, that the contract would have provided 264 team loads and 60 solo loads, a total of 324 loads.

After determining the total number of loads, the bankruptcy court calculated the profit Mr. Cowen would have made by running some of the loads using two trucks under his own authority.  *Bankruptcy Court Order* [#9-3], CM/ECF p. 56.  The bankruptcy court found Mr. Cowen would not have had access to more than two trucks for this purpose. This calculation accounts for 48 team loads using two trucks under the authority of Mr. Cowen.  The mathematical approach of the bankruptcy court is correct and the appellants do not challenge that approach.  Rather, the appellants challenge only the total number of team loads used in the calculation.

Using the same mathematical approach and correcting the total number of team loads from 294 to 264, the damages caused by the violation of the automatic stay for the loads Mr. Cowen could have run using two trucks under his own authority total 63,646.56 dollars.  The bankruptcy court awarded 71,602.38 dollars using a total of 294 team loads.   The bankruptcy court erred when it based its calculation on a total of 294 team loads rather than 264 team loads.    For this aspect of damages, the actual damages awarded by the bankruptcy court must be reduced by the difference between these two amounts, which is 7,955.82 dollars.

The calculations above account for 48 loads using two trucks under the authority of Mr. Cowen.  Following this calculation, the bankruptcy court calculated the damages Mr. Cowen suffered from his inability to run the remaining loads by using owner-operators.  *Bankruptcy Court Order* [#9-3], CM/ECF p. 56.  The bankruptcy court found that 300 loads, 240 team loads and 60 single loads, would have been run in this fashion.  *Id.*  The appellants contend this calculation must be corrected to account for the correct number of team loads, 264.  I agree.  With a total of 324 loads at issue, 48 loads run by two trucks under the authority of Mr. Cowen, the remaining number of loads is 276.  Those loads would have been owner-operator loads.  The bankruptcy court found that Mr. Cowen would profit 100 dollars on each owner-operator load. Finding there would have been 300 owner-operator loads, the bankruptcy court awarded an additional 30,000 dollars in damages.  Based on the evidence summarized above, 276 is the correct number of owner-operator loads.  At 100 dollars per load, that results in damages to Mr. Cowen of 27,600 dollars.  For this aspect of damages, the damages awarded by the bankruptcy court must be reduced by the difference between these two amounts, or 2,400 dollars.

Finally, the appellants argue that the damages awarded by the bankruptcy court were speculative and constitute clear error. The earnings record of Mr. Cowen in the years leading up to his bankruptcy often shows losses, the appellants note. With that, they contend, it is clear error for the bankruptcy court to find he would have earned substantial profits in the months immediately following his bankruptcy filing. *Opening brief* [#14], p. 38. The bankruptcy court cites substantial and specific evidence to support its damages calculations and those calculations are far from speculative. In comparison to that evidence and analysis, the contention that a person who lost money in the past is unlikely to make money in the future has much less basis.

The appellants claim also that no evidence was adduced to show that Mr. Cownen attempted to mitigate his damages. Mitigation of damages is an affirmative defense. It was the burden of the appellants to raise this defense if they wished to rely on it.

Re-calculating the damages caused to Mr. Cowen due to his inability to perform the postal service contract, the damages awarded by the bankruptcy court must be reduced by a total of 10,355.82 dollars. On all other points, however, the award of actual damages by the bankruptcy court is correct.

### VIII.  AWARD & CALCULATION OF PUNITIVE DAMAGES

Under § 362(k)(1), "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorney's fees, and, in appropriate circumstances, may recover punitive damages." "(T)o demonstrate a violation of § 362(k)(1), the debtor bears the burden of establishing, by a preponderance of the evidence, that the creditor knew of the automatic stay and intended the actions that constituted the violation; no specific intent is required." ***In re Johnson***, 501 F.3d

1163, 1172 (10th Cir. 2007).  Such a willful violation of the stay mandates an award of actual damages.

Section 362(k)(1) does not specify what additional factors constitute "appropriate circumstances" for the recovery of punitive damages.  The Bankruptcy Appellate Panel for the Tenth Circuit has discussed with approval four factors considered by a bankruptcy court: "(1) the nature of the defendant's conduct; (2) the defendant's ability to pay; (3) the motives of the defendant; and (4) any provocation by the debtor."  *In re Diviney*, 225 B.R. 762, 776-77 (10th Cir. BAP 1998).  The Colorado bankruptcy court has suggested a fifth factor, "the level of sophistication of the creditor."  *In re Gagliardi*, 290 B.R. 808, 820 (Bankr. D. Colo. 2003) (citing *Diviney* 225 B.R. at 777).  "The primary purposes of an award of punitive damages are punishment and deterrence."  *Id*.

The appellants claim several errors in the award of punitive damages by the bankruptcy court.  First, they argue the award is not based on an act of the appellants in violation of § 362(a)(3), but only on inaction by the appellants in simply maintaining possession of the two trucks as they had repossessed pre-petition.  For the reasons detailed above, I reject this contention.  The defendants violated § 362(a)(3) by knowingly maintaining possession of the trucks after the automatic stay was in effect.

Second, the appellants claim the bankruptcy court failed to make any findings as to the actual knowledge or reckless disregard of the automatic stay by the defendants. This contention is simply untrue.

> Immediately after the bankruptcy filing, Debtor's counsel notified the
> Defendants of the filing and the automatic stay, and requested the
> immediate return of the Trucks and the Debtor's personal possessions.
> When the Defendants did not return them voluntarily, the Debtor sought
> orders to show cause alleging violations of the automatic stay and
> requesting immediate turnover. The Defendants did not turn over
> anything, claiming that, by the time of the bankruptcy filing, the Debtor no

longer held any interest in either of the Trucks.

*Bankruptcy Court Order* [#9-3], CM/ECF p. 47.

> There is no question in this case that the Defendants knew about the
> Debtor's bankruptcy filing, but refused to return the Trucks. Therefore,
> their stay violations were willful.

*Id.*, p. 54. The record in support of these findings and conclusions is quite sufficient.

Third, the appellants contend the bankruptcy court erroneously considered the

***Gagliardi*** factors in determining the *amount* of punitive damages as opposed

determining *whether* to impose punitive damages. The ***Gagliardi*** court does address

the five factors in terms of *whether* to award punitive damages. ***Gagliardi***, 290 B.R. at

820. The court then notes the factors it found to be relevant to a determination of the

*amount* of punitive damages. The court cited "the nature of the Respondents' conduct,

the ability to pay, and the amount of actual damages awarded. The amount of punitive

damages should be sufficient to deter the Respondents, and similarly situated parties in

the future, from unilaterally determining the scope and effect of the automatic stay."

***Gagliardi***, 290 B.R. at 822. Needless to say, the two groups of factors are quite similar

and they bleed together. The consideration of the ***Diviney / Gagliardi*** factors on the

question of the amount of punitive damages was not error.

Fourth, the appellants argue the bankruptcy court did not consider adequately all

five factors. The bankruptcy court did not take evidence on the ability to pay of the

appellants, but it did consider the other factors. Ultimately, the bankruptcy court found

as follows:

> Although the Court received no evidence regarding the Defendants' ability
> to pay damages, the remaining factors weigh heavily in favor of the
> imposition of punitive damages here. The Defendants' conduct involves

the most egregious stay violations this Court has ever seen.  While the
Debtor clearly defaulted on his loan obligations, nothing he did justified the
scorched earth tactics employed by the Defendants. The Court found the
Defendants' attitudes while testifying to be contemptuous of the
bankruptcy process, the Debtor, and the Court. And while the Defendants
may not be sophisticated in the sense of running a Fortune 500 company,
they are extremely scheming and manipulative.

In their attempts to avoid liability for their actions, these Defendants
likely forged documents and gave perjured testimony. Certainly, they
changed their stories over the course of this case on both major and
insignificant issues. The documents they produced to attempt to convince
the Court that the Debtor's rights in the Trucks had been terminated
pre-bankruptcy were highly suspect to say the least. And it came to light
during the trial that they coached their witnesses on what to testify to
during the breaks, despite a sequestration order to the contrary.

*Bankruptcy Court Order* [#9-3], CM/ECF p. 58.

In essence, the bankruptcy court considered four factors in a five factor test and

noted the lack of evidence on the fifth factor, ability to pay.  The bankruptcy court found

that the four factors considered "weigh heavily in favor of the imposition of punitive

damages."  *Id.*  In this context, even if the fifth factor weighed against punitive damages,

the analysis in toto necessarily weighed in favor of punitive damages.

The appellants object also that the consideration of the conduct of the appellants

by the bankruptcy court "focuses primarily on their conduct surrounding the trial and

their contemptuousness of the bankruptcy process, not their conduct in violating the

stay." *Opening brief* [#14], p. 35.  The order of the bankruptcy court reflects a careful

consideration of the actions of the appellants with regard to the two trucks and their

defiance of the automatic stay.  This is based on the refusal of the appellants to return

the trucks after they knew of the stay, including after court proceedings to enforce the

stay were begun.  The attitude of the appellants during the trial is further evidence of the

attitude and motivations of the appellants with regard to the automatic stay in particular

and the bankruptcy process in general.  That attitude is relevant to an assessment of the motivations of the appellants as they defied the automatic stay and the need to deter them from similar violations in the future.

The appellants contend the bankruptcy court improperly discounted the factor of provocation of the debtor.  The appellants claim the default of the debtor on his debts to the appellants was a provocation which should not be discounted in the analysis.  In the context of a violation of the automatic stay, provocation by the debtor is best analyzed as provocation to violate the automatic stay.  *See In re Tigue*, 82 B.R. 724, 737 (Bankr. E.D. Pa. 1988).  That is the key issue on which the analysis of these factors focuses. No doubt, the default of the debtor in this case provoked the appellants to repossess their collateral, the trucks.  However, the appellants cite no record evidence which tends to show the debtor provoked the appellants to violate the automatic stay.  Rather, the debtor and his counsel demanded that the appellants comply with the automatic stay. The bankruptcy court found, correctly, that this factor weighs in favor of an award of punitive damages.

Next, the appellants contend the bankruptcy court improperly found that the level of sophistication of the appellants augurs toward an award of punitive damages.   Like the provocation factor, the sophistication factor properly is focused on sophistication concerning debt collection and the effect of the automatic stay.  This factor is part of the determination of whether or not the appellants understood the meaning of the automatic stay and chose to defy the stay nevertheless.  *See, e.g., In re Baggs*, 283 B.R. 726, 729 (Bankr. C.D. Ill.2002) (auto dealer lacked sophistication of national or multinational corporation; even so, as business dealing regularly with consumer customers, there is no reason to exempt dealer from being aware of and honoring the effect of the

automatic stay).

In the present case, the bankruptcy court found that

while the Defendants may not be sophisticated in the sense of running a
Fortune 500 company, they are extremely scheming and manipulative.

In their attempts to avoid liability for their actions, these Defendants
likely forged documents and gave perjured testimony. Certainly, they
changed their stories over the course of this case on both major and
insignificant issues. The documents they produced to attempt to convince
the Court that the Debtor's rights in the Trucks had been terminated
pre-bankruptcy were highly suspect to say the least. And it came to light
during the trial that they coached their witnesses on what to testify to
during the breaks, despite a sequestration order to the contrary. Braden
Cowen, the Debtor's thirteen year old son, testified to seeing Mr. Williams
walk up to Butch Dring, a sequestered witness, during a break in the trial
and overheard him say something to the effect of "this is what Jrod [the
Debtor] just said. Here's what I need you to say." Because he was on his
way to the bathroom at the time, Braden did not hear what Mr. Williams
told Butch Dring to say.

*Bankruptcy Court Order* [#9-3], CM/ECF p. 58.

In the view of the appellants, these findings show "a marked lack of

sophistication of the appellants." *Opening brief* [#14], p. 25.  Thus, the appellants

contend, the sophistication factor weighs against an award of punitive damages.  This

contention improperly focuses on a broad level of sophistication as opposed to whether

the appellants had the level of sophistication necessary to understand the effect of the

automatic stay.  The manipulations of the appellants, as found by the bankruptcy court,

demonstrate sophistication in the relevant area, collection of debts and dealing with

collateral related to secured debts.   Given that type of sophistication, the bankruptcy

court properly found that the sophistication of the appellants weighs in favor of an award

of punitive damages.

Finally, the appellants contend that a proper analysis of the relevant factors

shows that the amount of punitive damages imposed by the bankruptcy court was

excessive.  On this issue, the bankruptcy court said:

> In assessing the amount of punitive damages, the Court weighs heavily the need to send a message to deter any other creditors from following the actions of these Defendants.
>
> > The automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions. It permits the debtor to attempt a repayment or reorganization plan, or simply to be relieved of the financial pressures that drove him into bankruptcy.
>
> H.R. Rep. No. 95-595, at 340 (1977), reprinted in 1978 U.S.C.C.A.N. 5963, 6296-97 (capitalization altered). If creditors are able to forge documents in order to claim that a prepetition transfer occurred to terminate a debtor's rights without facing substantial liability for doing so, then the automatic stay will become a nullity and bankruptcy will no longer provide relief to debtors. This case demands the imposition of substantial sanctions.

*Bankruptcy Court Order* [#9-3], CM/ECF p. 58.

The bankruptcy court awarded 35,295.08 dollars in actual damages for lost income against appellant Bert Dring only, and awarded the same amount as punitive damages against Bert Dring.  The bankruptcy court awarded actual damages of 101,602.38 dollars for the loss of net income related to the 2013 postal service contract. This award is against all defendants, jointly and severally.  The bankruptcy court awarded the same amount as punitive damages.  The court awarded 8,058 dollars for the loss of the personal property of the debtor, and awarded the same amount as punitive damages.[4]   This award is against all defendants jointly and severally.  The total actual damages awarded was 144,955.46 dollars.

The punitive damages award is equal to the actual damages award.  Obviously,

---

[4]  The bankruptcy court granted the appellants 14 days to return the personal property to the debtor.  If they did so, this award "will be reduced to $1,000."  *Bankruptcy Court Order* [#9-3], CM/ECF p. 59.

the bankruptcy court concluded that awarding punitive damages in an amount equal to the actual damages caused by the violation of the automatic stay was a reasonable measure of punitive damages.  As a matter of fact and law in this case, that measure is reasonable.

As discussed above, the damages awarded for the loss of net income on the 2013 postal service contract must be reduced.  This award of actual damages in the amount of 101,602.38 for this loss must be reduced by 10,355.82 dollars.  The proper award is 91,246.56 dollars.  Concomitantly, and consistent with the rationale of the bankruptcy court, I reduce the award of punitive damages by a like amount, 10,355.82 dollars.

## IX.  CONCLUSION & ORDERS

The bankruptcy court had the constitutional authority to address and resolve all of the issues in this core proceeding concerning violations of the automatic stay, including the authority to enter a final judgment.  The bankruptcy court did not err when it retained jurisdiction over this proceeding after the underlying bankruptcy case was dismissed.  The bankruptcy court did not err in its interpretation and application of 11 U.S.C. § 362(a)(3) with regard to property that was not in possession of the debtor when the debtor filed his petition.  In assessing damages against the appellants for their violations of the automatic stay which caused the debtor to lose the 2013 postal service contract, the bankruptcy court erred arithmetically by awarding an excess of 10,355.82 dollars in damages.  The award of actual damages must be reduced by 10,355.82 dollars.  The evidence in the record is not sufficient to support this portion of the damages award.  The bankruptcy court properly analyzed the factors relevant to an award of punitive damages.  Following the rationale of the bankruptcy court that punitive

damages should be equal in amount to actual damages; thus, the award of punitive damages also must be reduced by 10,355.82 dollars.

**THEREFORE, IT IS ORDERED** as follows:

1.  That the August 18, 2014, order of the bankruptcy court in Adversary No. 13-1622-EEB is reversed in part concerning the award of actual and punitive damages;

2. That the award of actual damages in the amount of 101,602.38 dollars for the loss of net income related to the 2013 postal service contract is reduced to 91,246.56 dollars;

3. That the award of punitive damages in the amount of 101,602.38 dollars tied to the loss of net income related to the 2013 postal service contract is reduced to 91,246.56 dollars;

4.  That otherwise, the August 18, 2014, order of the bankruptcy court in Adversary No. 13-1622-EEB is affirmed;

5.  That this case is remanded to the to the United States Bankruptcy Court for the District of Colorado with directions to enter an amended judgment awarding actual and punitive damages for the loss of net income related to the 2013 postal service contract in the amounts specified in this order; and

6.  That this case, Civil Action No. 14-cv-02408-REB-AP is closed.

Dated September 30, 2015, at Denver, Colorado.

**BY THE COURT:**

Robert E. Blackburn
United States District Judge